**Kenneth A. LANDES, Appellant,**

v.

**STATE FARM FIRE & CASUALTY CO., Respondent.**

**No. WD 50855.**

Missouri Court of Appeals,
Western District.

Oct. 10, 1995.

Harley Kent Desselle, Independence, for appellant.

James O. Schwinn, Arlen Tanner, Overland Park, KS, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

FENNER, Chief Judge.

Kenneth Landes appeals from the Order of the Circuit Court of Jackson County granting respondent State Farm Fire & Casualty Company's Motion for Summary Judg-

ment. In his jurisdictional statement, appellant also alleges that the court denied his own motion for summary judgment, but the record does not reflect that such motion was ever filed by appellant. Appellant's only mention of a motion for summary judgment on his own behalf is in the final sentences of his Suggestions in Opposition to Defendant's Motion for Summary Judgment. Such a vague reference clearly does not satisfy the particularity requirement for summary judgment motions that is part of Rule 74.04(c)(1).[1] Further, the passing reference made by appellant to entitlement to summary judgment does not satisfy the purpose of the particularity requirement, which has been stated as follows:

> The plain purpose of that requirement is to apprise the opposing party and the trial court (and in turn the appellate court) of the specific basis on which the movant claims he is entitled to summary judgment. With the issues so focused, the opposing party may prepare his defense to the motion and the trial court may make an informed ruling. If the motion is sustained and the opposing party appeals, the issues are clear-cut. The appellate court need not speculate concerning the grounds on which summary judgment was granted. All this serves to expedite the disposition of the case. A motion for summary judgment which fails to meet the requirement is defective.

*Hartford Accident & Indem. Co. v. M.J. Smith Sawmill, Inc.,* 883 S.W.2d 91, 92 (Mo. App.1994) (*quoting Johns v. Continental W. Ins. Co.,* 802 S.W.2d 196, 197 (Mo.App.1991)). Clearly, any motion for summary judgment appellant claims to have made is defective and must fail.

As to State Farm's motion, the record reveals that on May 29, 1991, a valid policy of insurance issued by State Farm was in effect for appellant's property located at 24105 West 40 Highway, Blue Springs, Missouri,

with policy limits of $180,000 for property damage. Appellant had leased the property to Plumbing & Electrical Supply Company ("P & E"), the terms of which provided for a rental rate of $6,221.27 per month. State Farm was not a party to the lease and the lease was not referenced or incorporated into the policy of insurance.

On May 29, 1991, a fire occurred at appellant's property. On June 3, 1991, appellant's former counsel contacted State Farm and informed the company of a clause in the lease with P & E that would allow P & E to terminate the lease upon fifteen days notice if repairs to the building were not completed within 120 days of the fire. On June 5, State Farm sent appellant a reservation of rights letter indicating that an arson investigation was underway as the fire appeared incendiary in nature. During the period of investigation, it appears that appellant entered into a contract with Charlie Rhoades Construction Company to rebuild/repair the building for a maximum guaranteed fee of $179,-760.41. Appellant signed a sworn statement of proof of loss on June 17th and forwarded it to State farm, approximating a property loss of $170,000.00. An arson investigation test report letter to State Farm also dated June 17th indicated that four of seven samples from the fire tested positive for gasoline. A second reservation of rights letter, acknowledging receipt of the first proof of loss statement, was sent to appellant on June 19th.

On July 9, 1991, appellant contacted State Farm to remind the company of the 120 day repair provision in the lease and to inquire as to why no settlement had yet been paid (even though appellant knew of the arson investigation). On July 11th, State Farm made the first loss of business income payment to appellant in the amount of $12,442.54 for the lost rent on the building for two months. On July 29th, State Farm issued a draft in the amount of $99,939.78 to appellant. State

---

1. Rule 74.04(c)(1) states:

   Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts. Each motion for summary judgment shall have attached thereto a separate legal memorandum explaining why summary judgment should be granted and affidavits not previously filed that are relied upon in the motion.

Farm labeled the draft as an actual cash value settlement with respect to the building to be used as the advance payment to the reconstruction contractor. Also on July 29th, appellant signed a second sworn statement of proof of loss, claiming a loss of $180,000, or a $10,000.00 increase from the first sworn proof of loss. State Farm continued to make monthly disbursements of $6,221.27 as loss of business income payments for August and September.

On September 10, 1991, P & E, in compliance with the lease with appellant, terminated the lease as the property had not been restored within 120 days. On September 17th, State Farm issued a draft to United Missouri Bank, appellant, and P & E in the amount of $197,463.80 under a separate policy of insurance covering P & E's loss.

On October 24, 1991, appellant's former counsel sent a letter to State Farm demanding payment of $6,200 per month rental until a new tenant was found for the insured property. In the letter, appellant mentions a prior policy of insurance for the building with Hawkeye Security Company. Appellant claims to have switched to the State Farm policy only after his State Farm agent for other matters had the Hawkeye policy reviewed and proposed an equal or comparable State Farm policy. After the fire loss, however, it was discovered that the two policies differed as to coverage for loss of use of the premises. The Hawkeye policy apparently provided loss of use coverage for a minimum of twelve months, while the State Farm policy provided coverage only for the "period of restoration."

State Farm issued a draft for the loss of business use for the month of October on November 7, 1991, in the amount of $6,221.27. An additional draft in the amount of $20,000.00 was issued to the appellant on the property loss on November 16. State Farm notified appellant on November 19th that the restoration period was complete as of that date. On November 27th, the final draft on the property loss in the amount of $57,494.69 was issued to appellant. A final draft in the amount of $3,940.22 was issued to appellant on December 9th for the pro-

rate loss of business use for the month of November.

In total, State Farm paid appellant $177,334.46 to restore appellant's building. An additional amount totalling $35,046.57 was paid appellant under the loss of income coverage. The property restoration was completed and paid for within six months of the fire of questionable nature.

Appellant thereafter filed his petition alleging State Farm's delay caused the loss of the lease tenant, P & E, and that State Farm had refused to pay according to the terms of the loss of use provisions of the policy. The petition further alleged that State Farm was negligent in causing appellant to lose P & E as a tenant. The trial court granted State Farm's motion for summary judgment on all counts. This appeal followed.

## I. STANDARD OF REVIEW

The Missouri Supreme Court provided an exhaustive analysis of summary judgment practice and review in its opinion in *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). Appellate review of summary judgments is essentially *de novo*. *Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different than those which the trial court should have employed initially. *Id.* As the trial court's initial judgment is founded on the record submitted and the law, there is no need for the appellate court to defer to the trial court's granting of the summary judgment motion. *Id.*

■ When considering the appeal, the Court will review the record in the light most favorable to the party against whom judgment is sought. *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App.1993). The movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted; any evidence in the record that presents a genuine issue as to the material facts defeats the movant's prima facie showing. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. A "genuine issue" exists where the record contains competent material that evidence two plausible, but contradic-

tory, accounts of the essential facts. *Id.* A "genuine issue" is a dispute that is real, not merely argumentative, imaginary, or frivolous. *Id.*

■ The non-movant is accorded the benefit of all reasonable inferences from the record. *Martin v. City of Washington,* 848 S.W.2d 487, 489 (Mo. banc 1993). If the movant requires an inference to establish his right to judgment as a matter of law and the evidence reasonably supports an inference other than that alleged by movant, a genuine dispute exists and the movant's prima facie showing fails. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 382.

■ Facts set forth in support of a party's motion for summary judgment are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. Even if uncontradicted, however, the facts alleged by movant must still establish an entitlement to judgment as a matter of law for summary judgment to be proper. *See E.O. Dorsch Electric Co. v. Plaza Const. Co.,* 413 S.W.2d 167, 173 (Mo.1967). The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 380.

## II. POLICY PROVISIONS IN QUESTION

Before addressing the merits of the summary judgment motion in question, it is necessary to provide some of the relevant policy provisions for our analysis, as they are facts uncontroverted by appellant. With regard to the conditions for payment of a loss, the policy states:

1. **Loss Payment.** In the event of loss covered by this policy:

   a. we will give notice, within 30 days after we receive the sworn statement of loss, of our intent to settle the loss according to one of the following methods:

   (1) pay the value of lost or damaged property as determined in condition 2. Valuation;

   (2) pay the cost of replacing or repairing the lost or damaged property, plus any reduction in value of repaired items;

   (3) take all or any part of the property at an agreed or appraised value;

   (4) repair, rebuild or replace the property with other property of like kind and quality;

   b. we will not pay you more than your financial interest in the covered property;

   c. . . .

   d. . . .

   e. we will pay for covered loss within 60 days after we receive the sworn statement of loss, if:

   (1) you have complied with all of the terms of this policy; and

   (2) we have reached agreement with you on the amount of loss or an appraisal award has been made.

2. **Valuation.** The value of a covered property will be determined at:

   a. replacement cost, without deduction for depreciation, as of the time of loss to all covered property other than that described in b. below, but:

   (1) you may make a claim for loss covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss;

   (2) we will not pay for any loss on a replacement cost basis until the lost or damaged property is actually repaired or replaced and then, only if the repairs or replacement are made as soon as reasonably possible after the loss;

   (3) . . .

   (4) we will not pay more for loss in any one occurrence on a replacement cost basis than the least of:

   (a) the limit of insurance under this policy applicable to the lost or damaged property;

(b) the cost to replace the lost or damaged property on the same premises with other property or comparable material and quality that can be used for the same purpose; or

(c) the amount you actually spend that is necessary to repair or replace the lost or damaged property;

. . . .

However, the policy also states that when the loss or damage to the covered property is caused by or results from fire, the first paragraph and item **a.** of the above **loss payment** section are replaced by the following:

1. **Loss payment.** In the event of loss or damage covered by this policy:

a. at your option, we will either:

(1) pay you an amount of money equal to the damage done; or

(2) repair the damage so that the property is in as good a condition as before the fire.

But we will not pay more than the Limit of Insurance.

With regard to the coverage for loss of income, the State Farm policy provides the following:

If Loss of Income coverage is shown in the Declaration, we will pay:

1. for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by accidental direct physical loss to property at the described premises. . . .

We will only pay for loss of "business income" or "extra expense" that occurs within 12 consecutive months after the date of accidental direct physical loss caused by an insured loss.

The policy goes on to provide definitions for many of the terms within the loss of income coverage provisions:

1. "business income" means the net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operat-

ing expenses, including payroll, incurred during the "period of restoration;"

.   .   .   .   .

4. "operations" means the type of your business activities occurring at the premises shown in the Declarations:

5. "period of restoration" means the period of time that:

(a) begins with the date of accidental direct physical loss caused by an insured loss at the described premises; and

(b) ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any law that regulates the construction, use or repair, or requires the tearing down of any property. The expiration date of this policy will not cut short the "period of restoration."

Coverage for loss of income is subject to the following policy exclusions:

We will not pay for:

1. any "extra expense" or increase of "business income" loss caused by:

(a) delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your "business income" during the "period of restoration";

2. any "extra expense":

(a) caused by suspension, lapse or cancellation or any license, lease or contract beyond the "period of restoration"; or. . . .

3. any other consequential loss; or. . . .

Based on its purported compliance with these terms, State Farm filed its motion for summary judgment.

## III. STATE FARM'S REQUIRED SHOWING FOR SUMMARY JUDGMENT

■ State Farm was a "defending party" in the underlying action. A movant who is a "defending party" may establish a right to summary judgment by showing any one of the following: (1) facts that negate any one of the claimant's facts required to establish an element of claimant's claim; (2) the non-movant, after a reasonable period for discovery, has not and will not be able to produce evidence for the trier of fact to find the existence of any one of claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pled affirmative defense. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

■ Only once the movant, State Farm, has satisfied one of the three grounds for establishing a right to judgment is the non-movant, appellant, required to set forth specific facts showing there is a genuine issue of material fact. *Id.* (*citing* Rule 74.04). Once a movant makes a prima facie showing, the adverse party may not rest upon the mere allegations or denials contained in their pleadings to contradict facts alleged by the movant. *Id.*

State Farm relies on its allegation that it complied with all of the terms of the policy for its motion for summary judgment. If State Farm can demonstrate compliance with the terms of the fire insurance policy issued to appellant, then appellant must fail to establish the elements of its claims.

■ First, we look to whether the payment of loss conditions were satisfied. State Farm was required to pay appellant an amount of money equal to the damage done to the property or repair the property so that it was in as good a condition as it was before the property. State Farm did, in fact, have the building repaired to as good condition as that of the building before the fire.

The policy would seem to indicate at first blush that State Farm was obligated to pay for the loss within 60 days of the submission of the sworn statement of loss. If this provision were applicable, State Farm would not have complied with the policy in question. In the case at bar, however, appellant was not seeking a cash payout for the damage to the property. Instead, appellant sought repair of the property, as was his option under the policy. If repair is sought, payment is made on a replacement cost basis. Under the terms of the policy, payment on a replacement cost basis is not made until the property is actually repaired or replaced. Within eight days of the completion of repairs to appellant's property, the full balance of the loss payments totalling $177,334.46 had been paid by State Farm. We believe this complies with the terms of the policy for loss payment.

■ Finally, with regard to loss of income coverage, State Farm was obligated to pay appellant's actual lost business income during the period of restoration. The period of restoration in this case was from the date of the fire until the repair of the property was completed on November 19th. The only lost income was in the form of lost rent from appellant's tenant, P & E, during the period of restoration. State Farm compensated appellant for the lost rent during the period of restoration, amounting to a total payment of $35,046.57. Again, we believe State Farm complied with the coverage terms of the policy as they apply to loss of business income.

By demonstrating that it complied with the applicable terms of the property insurance policy issued appellant, State Farm has made a prima facie showing that it is entitled to judgment as a matter of law.

## IV. APPELLANT'S RESPONSE TO STATE FARM'S PRIMA FACIE SHOWING OF ENTITLEMENT TO SUMMARY JUDGMENT

Once State Farm made a prima facie showing of entitlement to summary judgment, appellant, in response, was required to set forth specific facts, by affidavit or otherwise, showing that there is a genuine issue for trial. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381 (*citing* Rule 74.04(e)). If appellant cannot contradict the showing of State Farm, judgment is properly entered against appellant because State Farm has

already established a right to judgment as a matter of law. *See Id.*

After reviewing the record and appellant's Suggestions in Opposition to State Farm's Motion for Summary Judgment, we have serious doubts as to whether appellant satisfied the minimum threshold requirement of Rule 74.04(e) that he set forth *specific* facts showing there is a genuine issue for trial. Appellant's "suggestions" were limited to a near blanket admission of State Farm's uncontroverted facts,[2] the submission of additional documents appellant believed should be considered in the uncontroverted material, and a brief argument section addressing State Farm's motion. We seriously question whether appellant has stated specific facts that present a genuine issue for trial as required under Rule 74.04(e). Nonetheless, we will address the merits of appellant's allegations in order to make our decision clear. Although the exact basis for appellant's arguments that summary judgment is improper are unclear from his brief, we will address four issues that appellant discusses throughout his brief.

## A. State Farm's Compliance with Section 379.150, RSMo 1990

■■ Appellant claims that State Farm's payment of $99,839.78 on July 29, 1991, labeled an actual cash value settlement payment, violates section 379.150, RSMo 1990 Supp. Section 379.150 states the following:

> Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured.

Appellant contends that the July 29th payment violates section 379.150 and the holding of this court in *Abercrombie v. Allstate Ins.*

Co., 891 S.W.2d 838 (Mo.App.1994), because it withheld depreciation, overhead, and profit.

Appellant misstates the principle of our holding in *Abercrombie.* In *Abercrombie,* the insured elected to take a monetary payment for the damage to her home from a fire rather than have the insurer repair the damage. The insurer attempted to withhold $15,651 in "depreciation" from an agreed appraised damage figure where the insured's contractor had used replacement materials that were cheaper substitutes than what was originally in the building, arguing that the home had not been returned to its pre-fire condition. We held that the insurer could not withhold this "depreciation" in variance with the appraisal where the insured chose to accept cash payment for the damages rather than electing for repair under section 379.150.

Unlike the situation in *Abercrombie,* appellant elected to have his property repaired by State Farm pursuant to the terms of the insurance policy, which reflects the language of section 379.150. The $99,839.78 payment was never represented to be the full and complete payment unless further improvements were made to the property. The payment represented the initial advance so that construction could begin. Appellant does not dispute that State Farm ultimately paid the complete expense of $177,334.46 to return the building to as good condition as before the fire after restoration of the building was complete. We believe there can be no question that State Farm's actions were in compliance with section 379.150. Appellant has failed to allege a genuine issue for trial within this argument to overcome any element of State Farm's prima facie showing of entitlement to summary judgment.

## B. Appellant's Entitlement to Additional Loss of Business Income Benefits

■■ Appellant next contends that State Farm did not pay all of the loss it was obligated to pay during the "restoration peri-

---

2. Appellant admitted that State Farm made a payment of $99,839.78 on July 29, 1991, but denied it was the "actual cash value" of the loss. This dispute is not material, as it is a quibble over semantics rather than substance. Appellant did not deny that State Farm made total loss payments of over $170,000.

od," claiming that he was entitled to additional lost rent payments pursuant to the lease with P & E. Appellant relates this claim to the provision in the lease between appellant and P & E that allowed P & E to terminate the lease if the premises were not restored within 120 days of the fire. Appellant summarizes his argument as follows:

> As established by the Statement of Facts, the insurance company was aware of the 120 day limitation within the lease in which the tenant could escape the lease if the property was not restored within the 120 day period. The fact is undisputed that within the 120 day period when the property could not be restored, that the tenant elected to terminate the lease. The damages then, were not only the monthly rental rate which accrued during the reconstruction period, but the premature termination of the lease *within* the restoration period.

**Appellant's Brief at p. 4 (emphasis in original).**

Appellant's argument, however, overlooks one key factor—State Farm was not a party to the lease with P & E. Neither the lease nor any of its terms were referenced or incorporated into the State Farm insurance policy. Appellant points to no specific terms in the policy that could be interpreted to bind State Farm to the terms of the lease. There is simply no basis on which to bind State Farm to the 120 day restoration provision in appellant's lease with P & E.

█ With regard to whether the premature termination of the lease could be considered damages that occurred during the restoration period, carrying appellant's entitlement to loss of income benefits beyond the restoration period, the State Farm policy contains an exclusion provision specifically stating that State Farm will **not** pay for any increased business income loss caused by the suspension, lapse, or cancellation of a lease. Coverage for additional expenses, those above and beyond the loss of rent payments *made* by State Farm, resulting from the termination of the P & E is unambiguously excluded from the policy.

█ Additionally, the policy also precluded coverage for losses caused by delay due to the actions of "any person, group, organization or governmental body.... This exclusion unambiguously excludes additional losses resulting from delays caused by the arson investigation in the case of appellant's building.

█ A court must accept the written policy as the expression of the agreement between the parties, and give effect to the intentions of the parties as disclosed by clear and unambiguous language. *Childers v. State Farm Fire & Casualty Co.,* 799 S.W.2d 138, 140 (Mo.App.1990). Courts will not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992) (*citing Rodriguez v. General Accident Ins. Co.,* 808 S.W.2d 379, 382 (Mo. banc 1991)). Because the State Farm policy is unambiguous in its exclusion of loss of business income damages related to cancellation of the lease and damages resulting from governmental delay, appellant's arguments along these lines fail to indicate a genuine issue for trial and fail to overcome State Farm's prima facie showing of entitlement to summary judgment.

## C. Consideration of Appellant's Negligence/Breach of Duty Claim

Appellant alleges that the trial court, in granting State Farm's Motion for Summary Judgment, failed to make findings concerning appellant's claims of negligence and breach of duty. However, in its ruling, the trial court noted:

> [State Farm] does owe [appellant] the duty to exercise good faith in its dealings. However, [appellant] has not alleged any action on the part of [State Farm] which is a breach of this duty. [Appellant] claims that State Farm delayed too long in paying on the claim. A fire loss occurred to the insured property on May 29, 1991. On July 29, 1991, [State Farm] paid [appellant] what [State Farm] considered the actual cash value of the loss. On November 16 and November 27, 1991, [State Farm] paid [appellant] additional amounts on the loss. [State Farm] also made pay-

ments to [appellant] for loss of income on July 11, September 6, November 7, and December 9, 1991.

[State Farm] conducted an arson investigation which did find evidence of gasoline in four of seven samples. [Appellant] was informed of the pending investigation by a letter dated June 5, 1991, only seven days after the loss. [Appellant] signed his first Sworn Statement in Proof of Loss on June 17, 1991. [Appellant] signed his second Sworn Statement in Proof of Loss in a corrected, higher` amount on July 29, 1991. Also on July 29, [State Farm] paid [appellant] what [State Farm] considered to be the actual cash value of the loss.

The case cited by [appellant], *Zumwalt v. Utilities Ins. Co.,* [360 Mo. 362], 228 S.W.2d 750 (Mo. banc 1950), is not relevant. In *Zumwalt,* the insurance company refused to accept a settlement offer unless the insured paid part of the amount because the reinsurer refused to contribute any money towards the settlement. No similar actions have been alleged in this case.

These findings are clearly related to appellant's claim of negligence and breach of duty—the trial court specifically found that appellant did not allege any action of State Farm that was a breach of duty. We discussed earlier the insufficiency of appellant's Suggestions in Opposition to State Farm's summary judgment motion and agree that appellant did not specifically allege any action by State Farm that breached its duty to appellant.

■ Appellant's singular claim of breach, that State Farm was negligent in delaying too long by going beyond the 120 day period in the P & E lease to complete repairs, in unpersuasive. First, as discussed earlier, State Farm was not a party to the P & E lease and not bound to its terms. Further, it is unreasonable to require or even expect a restoration within 120 days where reconstruction is delayed due to an arson investigation. Appellant consistently overlooks the fact that the fire at his property was suspicious in nature, yet State Farm paid all the benefits he was entitled to under the terms of the State Farm insurance policy. Appel-

lant failed to allege sufficient facts to show negligence or breach of duty on the part of State Farm.

### D. Reformation of the State Farm Policy

■ Appellant's prior policy of insurance for the premises in question was with Hawkeye Security of Des Moines, Iowa. Apparently, the Hawkeye policy differed from the State Farm policy as to loss of business income coverage. Appellant argues that the State Farm policy should be reformed to match the Hawkeye policy because appellant switched insurance companies after his State Farm agent had an underwriter review the Hawkeye policy and propose the State Farm policy as providing comparable coverage. Appellant contends that the possibility of reformation is a genuine issue of material fact that should be dealt with at trial rather than at summary judgment.

■ The facts and circumstances. of the case again fail to support appellant's contentions. No facts were set forth that would support reformation of the insurance contract to alter its plain language. Traditionally, a document or agreement may be reformed when there is a mutual mistake of material fact—each party must labor under the same misconception and the mistake must be a common one that neither party intended. *In re Estate of Hysinger,* 785 S.W.2d 619, 624 (Mo.App.1990). The evidence showing such mistake must be clear, cogent, and convincing. *Id.* Appellant has not alleged facts that would indicate a mutual mistake as to the loss of income coverage terms within the policy. There is no basis for appellant's contention that the State Farm policy should be reformed so that its terms match those of the Hawkeye Security policy.

### V. CONCLUSION

State Farm's Motion for Summary Judgment established a prima facie case that it was.entitled to judgment as a matter of law. Appellant admitted all of State Farm's uncontroverted facts except for one, quibbling over the semantics of a payment. The arguments set forth in appellant's suggestions in

opposition to State Farm's motion and in appellant's brief fail to contradict any of the elements of State Farm's prima facie case and fail to present a genuine issue for trial. The order of the trial court granting summary judgment to State Farm on all counts is affirmed.