**RUESCHHOFF PHYSICAL THERAPY, INC., d/b/a Heritage Physical Therapy, Plaintiff/Appellant,**

v.

**PREFERRED PROVIDER THERAPISTS, INC., et al., Defendants/Respondents.**

No. 73856.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 20, 1998.

Schlueter & Byrne, P.C., J. Joseph Raymond, III, Clayton, for appellant.

Husch & Eppenberger, LLC, Mark G. Arnold, Stephen H. Rovak, Stephen J. O'Brien, David P. Stoeberl, Patrick Gunn, Philip T. Ayers, Hazelwood, for respondent.

PUDLOWSKI, Presiding Judge.

This appeal arises from a petition filed by Rueschhoff Physical Therapy, Inc, d/b/a Heritage Physical Therapy ("RPT") seeking relief from Preferred Provider Therapists, Inc., William Hopfinger, William Nash, Medrehab of Missouri, Inc., Gene Inman, David Ayers, Charles McDonnell, Russell Eaves, and Dan Kelley (collectively, "Defendant") claiming that they conspired to boycott RPT's clinics from (1) admission into its independent practice association of physical therapy clinics, and (2) by horizontally restraining trade through territorial restrictions within the member agreements of the independent practice association. The trial court granted summary judgment to Defendant; RPT appeals its group boycott and territorial restraint claims. We affirm the judgment of the trial court.

■ In review of summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is intended to move the parties beyond the petition allegations and determine if a material fact exists for trial. *Martin v. City of Washington*, 848 S.W.2d 487, 491 (Mo. banc 1993). Appellate review of the grant of summary judgment is purely a question of law and, hence, uses the same criteria as imposed by the trial court in its initial determination of the

propriety of the motion. *ITT Commercial Finance,* 854 S.W.2d at 376. "In complex antitrust cases, no different or heightened standard for the grant of summary judgment applies." *Amerinet, Inc. v. Xerox Corp.,* 972 F.2d 1483, 1490 (8th Circuit), cert. denied, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

Summary judgment will be granted as a matter of law to the moving party when there is no genuine issue as to any material fact. Rule 74.04(c)(3). The moving party bears the burden of establishing a right to judgment as a matter of law; any evidence presented that demonstrates a genuine issue of material fact will defeat the moving party's prima facie showing. *Landes v. State Farm Fire and Casualty Company,* 907 S.W.2d 349, 353 (Mo.App. W.D.1995). In our review, the facts are construed most favorably to the party against whom the summary judgment was entered. *Lindell Trust Co. v. Lieberman,* 825 S.W.2d 358, 359 (Mo.App. E.D. 1992); *Gast v. Ebert,* 739 S.W.2d 545, 546 (Mo. banc 1987).

When viewing the facts for the purpose of our summary judgment standard, we find that: RPT provides out-patient physical therapy services. RPT began as one clinic and expanded to two prior to the filing of its petition. Subsequently, RPT expanded and now owns four physical therapy clinics in the metropolitan Saint Louis area.

Preferred Provider Therapist, Inc. ("PPT") is a network of 155 physical and occupational therapists that provide out-patient physical therapy in its 50 clinics throughout Missouri and Illinois. PPT is a preferred provider organization which offers physical therapy services at a reduced medical cost. These reductions are bundled together and submitted as benefit packages to large managed health care companies. After negotiations, these health care companies agree to refer all of their physical therapy patients to members of PPT for the agreed charges. All of the services rendered by PPT to the managed health care companies's clients are provided by PPT's affiliated member clinics.

In order to seek affiliation with PPT, a clinic must submit a written application. PPT processes and approves applications in the order they are received based on certain requirements and its locational need. PPT attempts to establish one clinic per 50,000 people in a county. Upon joining PPT, the new member signs a contract which states in part:

> Nothing contained in this Agreement shall prevent THERAPIST CORPORATION or any Therapist Providers from providing therapeutic services at any other locations, nor shall anything contained in this Agreement prevent THERAPIST CORPORATION from opening new or additional clinics; however, THERAPIST CORPORATION shall only provide Covered Services to Eligible Persons at the Designated Clinic or Designated Clinics as the case may be.

The PPT member clinics are prohibited from forming or joining competing networks while they are PPT members. Either member clinics or PPT may terminate the PPT provider contract, with notice, with or without cause.

William Hopfinger ("Hopfinger"), William Nash ("Nash"), and Daniel Kelley are owners of PPT member clinics and have been members of PPT's board of directors. Hopfinger and Nash are PPT officers. Medrehab of Missouri, Inc. ("Medrehab") is a PPT member. Gene Inman was a Medrehab employee and a PPT director.

In February 1990 RPT first contacted PPT regarding membership for its one clinic in the county of Saint Charles, Missouri. RPT was orally denied admission into the preferred provider organization. RPT again contacted PPT in December 1992 seeking admission for two clinics. PPT informed RPT that it did not have a geographic need for the location of its two clinics at that time. RPT submitted PPT's required written application in 1995 seeking affiliation for its two clinics. PPT admitted four clinics in the Saint Charles area: one owned by RPT, two owned by Ayers and Charles McDonnell, and one owned by MedRehab.

After acceptance, RPT desired to treat several patients at a non-member clinic with some special therapeutic equipment and treatment; however, it was prohibited from

doing so under its contract with PPT. RPT then brought suit against Defendant on 19 March 1996 claiming that its partial exclusion from PPT constitutes an unlawful group boycott, that PPT's site restrictions in providing services amount to an unlawful horizontal territorial restraint, and that Defendant tortiously interfered with its business expectancy. The trial court granted Defendant's motions for summary judgment. RPT appeals.

RPT alleges that four errors were committed in the trial court: (1) Defendant failed to meet its burden to establish that PPT lacked market power; (2) the trial court erred in defining the relevant market broader than RPT; (3) a genuine issue of material fact as to whether the restraints imposed by PPT were justifiable under the "rule of reason"; and (4) the trial court erred in its interpretation of *United States v. Topco*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972) because PPT engages in territorial restraints.[1] RPT concedes that if we find the trial court did not err in its determination of the market, as argued in its point relied upon number two, then its points one and three are rendered moot. Therefore, we will begin by discussing the trial court's determination of the market influence exerted by PPT.

■ Section 416.141 RSMo (1994) instructs this Court to construe Sections 416.011 to 416.161 "in harmony with ruling judicial interpretations of comparable federal statutes." Section 416.031.1 RSMo (1994) parallels the 15 U.S.C. Section 1 of the Sherman Act and provides that "Every contract, combination or conspiracy in restraint of trade or commerce in this state is unlawful." Only agreements that unreasonably restrain competition will violate the Sherman Act. *Standard Oil Co. v. United States*, 221 U.S. 1, 58–64, 31 S.Ct. 502, 515–17, 55 L.Ed. 619 (1911).

■ For a violation of 15 U.S.C. Section 1 of the Sherman Act: (1) defendants must contract, combine or conspire among each other; (2) the combination or conspiracy produces adverse, anticompetitive effects within relevant product and geographic markets; (3) the objects of and the conduct pursuant to the contract or conspiracy are illegal; and (4) plaintiff is injured as a proximate result of the conspiracy. *Johnston v. Norrell Health Care, Inc.*, 835 S.W.2d 565, 568 (Mo.App. E.D.1992). *(Martin B. Glauser Dodge Co. v. Chrysler Corp.*, 570 F.2d 72, 81 (3rd Cir. 1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978).)* The court may analyze a plaintiff's claim as either a per se violation of the Sherman Act, as when direct competitors agree to set prices or restrict output, or under the "rule of reason" to determine if the agreement unreasonably restrains competition. *Levine v. Central Florida Medical Affiliates, Inc.*, 72 F.3d 1538, 1546 (11th Cir.1996).

In *Levine*, an internist sought redress from a preferred provider organization, among others. Levine asserted that his repeated denial of membership in the organization and the organization's policy of discouraging its member doctors from referring patients outside the network establishes a group boycott which is a per se violation of the Sherman Act. The court disagreed. The "per se approach has generally been limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor...." *Levine*, 72 F.3d at 1550 (citing *F.T.C. v. Indiana Federation of Dentists*, 476 U.S. 447, 458, 106 S.Ct. 2009, 2018, 90 L.Ed.2d 445 (1986)). The court further held that the conduct of the preferred provider organization does not warrant the application of per se analysis based in part on Levine's inability to show the preferred provider organization had market power.[2]

---

1. Defendant filed a motion requesting that this Court dismiss RPT's appeal for its failure to comply with Rule 84.04(d). While the points on appeal are deficient according to the expressed standards, we believe that we can discern the issues which RPT attempts to raise. Therefore, we address the merits of the issues as set forth herein and deny Defendant's motion to dismiss. We strongly suggest that attorneys review the dictates of *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978) in drafting wherein and why the trial court erred.

2. *Levine* cites from the Department of Justice Enforcement Policy which provides assistance in analyzing the exclusion of providers from multiprovider networks.

■ Both parties agree that the analysis of whether PPT has market power in this case is governed by the rule of reason. Under that analysis, we look to see if the restraint imposed merely regulates and perhaps promotes competition or whether the restraints suppress or destroy competition. The rule of reason requires RPT to prove (1) an anticompetitive effect of Defendant's conduct on the relevant market, and (2) that there is no procompetitive benefit or justification for the conduct in order to be illegal. *Id.* at 1551. In order to meet the first prong of the rule of reason test, RPT must show that Defendant's actions have had an actual detrimental effect on the competition or that there is a potential for genuine adverse effect on the competition.

■ RPT fails to support the allegation that Defendant's behavior actually restricted competition. Since the time PPT excluded one of RPT's clinics, RPT has not suffered any detriment. RPT has continued to attract patients and expand into four clinics. Since RPT failed to demonstrate an actual detriment on competition, it must elucidate potential adverse effects on competition in the marketplace by defining the relevant market and proving that Defendant had sufficient market power to affect competition. *Id.* at 1552.

■ The relevant market is comprised of the geographic and the product markets. *Metts v. Clark Oil & Refining Corp.*, 618 S.W.2d 698, 703 (Mo.App. E.D.1981). "To define a market is to identify producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services." *Levine*, 72 F.3d at 1552 (citing 2A Phillip E. Areeda et al., Antitrust Law Paragraph 530a, at 150 (1995)). Everyone agrees that the proper geographic market is the Saint Louis Metropolitan area. RPT contends that the appropriate product market is outpatient physical therapy services provided to managed care organizations rather than physical therapy services as the trial court determined. The trial court did not err in its determination of the relevant product market.

■ The "market is composed of products that have reasonable interchangeability." *Id.* The trial court properly determined that the relevant product market is physical therapists rather than a preferred provider organization offering outpatient physical therapy services. Under this definition, RPT failed to establish that PPT maintains requisite market power so as to have the potential for genuine adverse effects on the competition. RPT's point relied on is denied and accordingly, its points one and three are rendered moot.

■ In its final point, RPT asserts that the trial court erred in finding that PPT's territorial restraints are not unlawful under *Topco* because the Topco Cooperative is functionally equivalent in operation and purpose to PPT. The facts in the case sub judice are distinguishable from *Topco*. The Topco members signed exclusive agreements which

Most multiprovider networks will contract with some, but not all, providers in an area. Such selective contracting may be a method through which networks limit their provider panels in an effort to achieve quality and cost containment goals and enhance their ability to compete against other networks. One reason often advanced for selective contracting is to ensure that the network can direct a sufficient patient volume to its providers to justify price concessions or adherence to strict quality controls by the providers. Where a geographic market can support several multiprovider networks, there are not likely to be significant competitive problems associated with the exclusion of particular providers by particular networks.

A rule of reason analysis usually is applied in judging the legality of excluding providers from a multiprovider network. The focus of the analysis is not on whether a particular provider has been harmed by the exclusion, but rather whether the exclusion reduces competition among providers in the market and thereby harms consumers. Therefore, exclusion may present competitive concerns if providers are unable to compete effectively without access to the network, and competition is thereby harmed. The Agencies also recognize, however, that there may be procompetitive reasons associated with the exclusion, such as the provider's competence or ability and willingness to meet the network's cost-containment goals. In addition, in certain circumstances network membership restrictions may be procompetitive by giving nonmember providers the incentive to form other networks in order to compete more effectively with the network.

*Levine*, 72 F.3d at 1550–51.

designated territories where they could sell Topco products. *Topco,* 405 U.S. at 602–04, 92 S.Ct. 1126. Members had veto power over admission of any other vendor into the territory or the cooperative. *Id.* Hence, in practice, the Topco Cooperative was insulated from any competition. Defendant did not limit RPT's ability to practice physical therapy in any area nor was there only one provider of PPT services in a defined area. RPT has failed to demonstrate how Defendant's conduct amounted to a per se anti-trust violation. Point denied.

The judgment of the trial court is affirmed.

CRANDALL, and AHRENS, JJ., concur.