Geraldine ABERCROMBIE, Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Respondent.

No. WD 49061.

Missouri Court of Appeals,
Western District.

Dec. 27, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 31, 1995.

Harley Kent Desselle, Independence, for
appellant.

Robert E. Gould, Kansas City, for respondent.

Before KENNEDY, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

KENNEDY, Presiding Judge.

Geraldine Abercrombie appeals from a
summary judgment in favor of Allstate Insurance Company, in her claim on her homeowner's policy for partial loss by fire of her
residence and its personal property contents,
for living expenses and damages for vexatious refusal to pay. The claim was submitted upon reciprocal motions for summary
judgment, and the trial court denied Abercrombie's and granted Allstate's.

## DAMAGE TO DWELLING

Geraldine Abercrombie on October
13, 1990, had a fire which damaged her house
at 3537 Mersington in Kansas City, Missouri,
but did not destroy it. She had a home

owners policy issued by defendant Allstate Insurance Company, which insured Mrs. Abercrombie against loss or damage to her house by fire.

The policy provided for an appraisal if the owner and the insurance company failed to agree on the amount of the loss.

Mrs. Abercrombie and the insurance company failed to agree on the amount of the loss, and the appraisal procedure was triggered by Mrs. Abercrombie's demand therefore.

The appraisers submitted a report specifying the amount of the loss as $52,621.

Mrs. Abercrombie entered into a contract for repairs to the house in the amount of $52,621, the appraised amount of the loss. The contract, however, called for cheaper windows than those which had been on the house before the fire (and which had been valued in the appraisers' report), and called for the use of cheaper drywall construction, rather than the more expensive repair of the lathe and plaster which had been used in the house before the fire. The moneys saved by Mrs. Abercrombie in the substitution of these two less expensive items, she applied to other features to make them better than they had been before the fire.

The insurance company paid Mrs. Abercrombie $36,970. This was $15,651 less than the appraisal. Allstate's explanation is that its policy required it to pay only "actual cash value" until the house was restored to its pre-fire condition. Mrs. Abercrombie had not restored the house to its pre-fire condition, Allstate said, because she had substituted the cheaper windows for the more expensive, and had used drywall instead of repairing the lathe and plaster. "Actual cash value" was not defined in the policy, but the policy did contain the following provision: "Actual Cash Value. This means there may be a deduction for depreciation."

Since it makes no difference in the way we decide the case, we accept the $15,651 reduction as representing "depreciation," although that figure seems to be arbitrary.

The policy language is clear enough. The appraisal provision of the policy says the appraisal amount "shall be the amount of the loss," and, again, "will determine the amount of the loss." The preceding section makes it all the clearer. In a section entitled "Our Settlement of Loss," it says: "We will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between you and us, *an appraisal award* or a court judgment." (emphasis ours.)

How does Allstate attempt to justify this withholding of $15,651 from their insured? It points to section 5 of the policy, entitled "How We Pay for a Loss." Allstate emphasizes the underlined portions (underlined in Allstate's brief, not in the policy itself), of that section, which reads as follows:

Payment for covered loss to personal property including carpeting whether or not it is fastened to the *residence premises,* will be by one of the following methods:

a) Replacement Cost. This means there will not be deduction for depreciation. *Payment will not exceed the smallest of the following amounts:*

1) *the amount actually and necessarily spent* to replace the property with similar property of like kind and quality;

2) the cost of repair or restoration;

3) the limit of liability shown on the declarations page for *Personal Property Protection* coverage, or any special limit of liability described in the policy.

*We will not pay more than the actual cash value of the damaged property until it is repaired, restored or replaced for your use.*

Replacement cost settlement will not apply to:

1) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced with new articles.

2) articles whose age or history contribute substantially to their value. This includes but is not limited to memorabilia, souvenirs and collector's items.

3) property which is obsolete or unusable for the purpose for which it was

originally intended because of its age or condition prior to the loss.

b) Actual Cash Value. This means there may be a deduction for depreciation.

*If you do not repair,* restore or replace the damaged or stolen property, *payment will be on an actual cash value basis,* not to exceed the limit of liability shown on the declarations page for Personal Property Protection coverage, or any special limit of liability described in the policy. You may make any claim for any additional payment on a replacement cost basis if you repair, restore or replace the damaged or stolen property within 180 days of the actual cash value payment.

The "How We Pay for a Loss" provision of the policy is inoperable insofar as it is inconsistent with section 379.150, RSMo 1986. That section reads: "Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire at the option of the insured." This section controls over any inconsistent provision of the insurance policy. *See, Boren v. Fidelity and Casualty Co. of New York,* 370 S.W.2d 706, 709 (Mo.App.1963); *Marti v. Economy Fire & Casualty Co.,* 761 S.W.2d 254, 258–9 (Mo.App.E.D.1988).[1]

Although she made no express election, it is clear that Mrs. Abercrombie elected the first option, given her by section 379.150, *i.e.,* to receive from Allstate "a sum of money equal to the damage done to the property," rather than to call upon Allstate to restore her damaged and uninhabitable house. This is clear from the fact that she assumed, with Allstate's acquiescence, the control of the reconstruction project. She selected her own contractor, and entered into a contract with him, by which he obligated himself to do the work, and she obligated herself to pay him the contract amount. Allstate made no overture toward making the repairs itself, nor did it, at any time, indicate that Mrs. Abercrombie's procedure was not in accordance with her rights and Allstate's. Neither party ever thought of any resolution of the Abercrombie claim other than the payment by Allstate to Mrs. Abercrombie of some undetermined sum of money—undetermined, that is, until the appraisal report. Of course, the very request for an appraisal to determine the amount of the loss constituted an election to take the money, for if she elected to have Allstate repair the property, an appraisal would have been superfluous.

■ Does the appraisal fix the "sum of money equal to the damage done to the property," which is the amount Mrs. Abercrombie was entitled to under Section 379.150? The appraisal report fixes only the amount "for the replacement costs to bring the residence to the condition it was in." *Wells v. Missouri Property Ins. Placement Facility,* 653 S.W.2d 207 (Mo. banc 1983), says at 214: "[O]ur courts have long held that the amount of damages under section 379.150 is to be determined by the difference in value of the property immediately before and immediately after the loss.... Cost of repair is admissible as evidence of damage, but of itself it is insufficient to establish the amount of the damage."

Neither party discusses the use in the appraisal of an improper measure of damages, nor did either of them at any point object to the appraisal's measure of damages. We are justified in giving to the appraisal the same effect as the parties gave to it, to wit, the effect of fixing the amount of Mrs. Abercrombie's damage. Allstate does not dispute that; its only argument here is, and throughout the case has been, that it was entitled to withhold the amount of depreciation until Mrs. Abercrombie returned the house to its pre-fire condition. This point we have ruled

---

1. Allstate cites out-of-state cases which have enforced "actual cash value" provisions, such as the one in its policy here. In those states, there apparently was no such statute as section 379.150, for the courts did not consider such a statute. The cases are of no authority at all in the face of Missouri's section 379.150. In one case, the "actual cash value" provision, even without a statute like section 379.150, was held to be void as "unconscionable." *Ferguson v. Lakeland Mut. Ins. Co.,* 408 Pa.Super. 332, 596 A.2d 883 (1991).

against Allstate, and we hold that Mrs. Abercrombie is entitled to judgment for $15,651.

## PERSONAL PROPERTY LOSS

We come now to the personal property loss, which was also covered by the homeowner's policy. The amount of the loss is $29,174.87. There is only one issue tendered to us by the parties. That issue is whether Allstate may withhold "depreciation" of $7,523.15 until Mrs. Abercrombie buys replacement personal property. This claim Allstate makes on the basis of section 5 of the policy, which it says entitles it to pay Mrs. Abercrombie only the "actual cash value" of the personal property until she has replaced the same, upon which they then would pay her the amount withheld. Mrs. Abercrombie, on the other hand, says she is entitled to payment of the amount of her loss in cash. She says she is unable to replace the property until the money is paid to her, and that the practical effect of allowing Allstate to withhold $7,523.15 until she replaces the property is to allow it to escape paying that amount.

If the language of the policy allows Allstate, as it claims, to pay some amount less than "a sum of money equal to the damage done to the property," the provision of the policy must yield to the provisions of § 379.150. *See, e.g., Marti,* 761 S.W.2d at 258–259; *Boren,* 370 S.W.2d at 709. Section 379.150 is applicable to the insured partial loss of personal property as it is to real estate. *Non–Royalty Shoe Co. v. Phoenix Assur. Co.,* 277 Mo. 399, 210 S.W. 37 (1919). While Mrs. Abercrombie made no express election to receive money damages rather than the replacement of the damaged property by Allstate, it is clear that she made a tacit election to receive the money damages, and Allstate has never claimed that it had the right or the duty to replace the damaged personal property. Having made that election, Mrs. Abercrombie was entitled to the full amount of her damages. About that amount there is, as we have noted above, no dispute. It is $29,174.87, of which $7,523.15 remains unpaid. Mrs. Abercrombie is entitled to judgment in that amount.

## ADDITIONAL LIVING EXPENSES

Finally, we sustain the trial court's ruling with respect to any additional living expenses. Appellant has documented $8,954.89 in living expenses and respondent has paid this amount. No documentation exists for the additional $3,775.00 claimed by Mrs. Abercrombie, so the trial court was correct in granting Allstate's motion for summary judgment on this claim.

## VEXATIOUS REFUSAL TO PAY

Having ruled in favor of Allstate, the trial court did not reach the issue of Allstate's liability for vexatious refusal to pay under section 375.420, RSMo 1986. The case is remanded for the determination of that issue.

Summary judgment in favor of Allstate reversed as to fire loss to residence and contents, and affirmed as to denial of additional living expenses. Case remanded for entry of summary judgment for Geraldine Abercrombie on fire loss to residence and contents. The judgment should include prejudgment interest. Case remanded for determination of Allstate's liability for vexatious refusal to pay under section 375.420.

All concur.