**Kevin P. HUESER, Appellant,**

v.

**SHELTER MUTUAL INSURANCE COMPANY, Respondent.**

**No. WD 49769.**

Missouri Court of Appeals,
Western District.

April 11, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Application to Transfer Denied
July 25, 1995.

Harley Kent Desselle, Independence, for appellant.

William J. Gotfredson, Kansas City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and HANNA, JJ.

KENNEDY, Presiding Judge.

Plaintiff's house and its contents were damaged by fire on September 7, 1992. The loss was covered by a fire insurance policy issued by defendant Shelter Mutual Insurance Company. Hueser brought this lawsuit against Shelter, claiming (after deducting payments previously made by Shelter to Hueser) damages of $49,123 for Shelter's failure to repair his property. Shelter claims that, by paying the amount of an appraisers' award, it has already paid Hueser all it owes under the policy.

The trial court granted summary judgment in favor of Shelter upon Shelter's motion. Hueser has appealed.

Following is the sequence of events occurring after the fire loss occurred:

September 3, 1992: Shelter wrote to Morris and Associates, public adjusters, which represented Hueser in his claim on the policy, and offered a cash payment of $39,347.42, or at Mr. Hueser's request would "repair this dwelling to his satisfaction." At that point, Shelter had not yet received a proof of loss from Hueser.

September 25: Hueser submitted proof of loss, claiming $88,500 as the amount of his claim.

October 3: Mr. Hueser, by his public adjuster representative, wrote to Shelter, advising that he wished to invoke the appraisal process provided by the policy. The letter gave the name, address and telephone number of the appraiser who had been selected by Mr. Hueser.

October 6: A letter from Shelter to Mr. Hueser's representative advised that Shelter had chosen one Wayne Sutter as its appraiser.

For reasons that are not entirely clear, the appraisers not only failed to agree upon the

amount of Mr. Hueser's loss, they did not select an umpire. The policy provides the two appraisers shall select an umpire, and, if the appraisers are unable to agree upon the amount of loss, they shall submit their differences to the umpire. Two of the three may make an award, which will determine the amount of the loss.

October 30: Shelter Mutual, acting under the provisions of the policy, requested the appointment of an umpire by the presiding judge of the circuit court. Its letter to the court stated that "Hartley Adjusters," who was Mr. Hueser's appraiser, had asked for the court appointment of an umpire.

December 16: The court appointed James W. Gamble as umpire.

March 6, 1993: Mr. Hueser withdrew his request for an appraisal, and elected, under the provisions of section 379.150 RSMo 1986, to have Shelter repair his house.

April 27, 1993: Shelter's appraiser, Wayne Sutter, and court-appointed umpire James W. Gamble made an award of $56,377.09. Mr. Hueser's appointed appraiser did not join in the award.

Thereafter, Shelter paid Mr. Hueser the amount of the appraisal award, stipulating that Mr. Hueser in accepting the payment was not foreclosed from seeking further relief.[1]

Shelter claims Mr. Hueser elected to receive damages for his loss, rather than to have the insurance company repair the damage to his house. This was an option given the insured by section 379.150. The request for an appraisal indicates such an election on his part; if he had intended to have the insurance company repair the house, as he had a right to do, the appraisal would have been useless. See *Abercrombie v. Allstate Ins. Co.*, 891 S.W.2d 838 (Mo.App.W.D.1994).

■ The question this case presents is whether Hueser's election to receive damages was *as a matter of law* irrevocable. We think it may not be said that the insured in all cases must be held to his initial election. In this case, the insured's damage is still

unpaid and unrepaired on March 6, 1993, six months after the loss. Two months less 10 days have passed since the umpire was appointed, completing the appraisal panel. At this point, insured undertakes to make a different election; he undertakes to elect the option to have the insurance company repair the house. He withdraws from the appraisal procedure. His interests are now unrepresented on the appraisal panel. Shelter's appraiser and the impartial umpire proceed with the appraisal, despite—or perhaps in ignorance of—the insured's withdrawal.

Neither party has cited any case which deals with this issue, nor have our own searches discovered any. Without a complete record of the circumstances surrounding the appraisal, and the cause or causes of its delay, we are unable to formulate any definitive rule or standard for the guidance of the trial judge. Upon remand, the parties may make such a record, and may present such reasons as they may believe should cause Hueser to be bound, or not bound, by the appraisal.

■ Principles of equity must govern in a situation like this. There no doubt comes a time when the insured's election under section 379.150 becomes irrevocable. For example, if the insured had chosen the option to have his loss repaired by the insurance company, then depending on circumstances it would not be equitable to allow the insured to change his election in the midst of the repair project. In this case, had the appraisal process proceeded with dispatch, then—once again depending upon circumstances—it might be inequitable to allow the insured to change his election. Shelter points out that it has got some investment in the appraisal procedure, and that is true, not only with respect to Shelter, but also with respect to the insured. That fact alone does not decide the case.

We are unable to say as a matter of law that Mr. Hueser's invocation of the appraisal process was an irrevocable commitment to the damages option of section 379.150. That

1. The payment and acceptance of the appraisal award complicates the alternative repair option, but we offer no solution to the problem posed by that circumstance.

being so, the case may not be disposed of by summary judgment.

Judgment reversed and cause remanded for further proceedings.

All concur.