**Jessie M. DOLLARD and Delbert Dollard, Appellants,**

v.

**DEPOSITORS INSURANCE COMPANY, Respondent.**

**No. WD 60492.**

Missouri Court of Appeals, Western District.

Dec. 24, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2003.

Application for Transfer Denied March 4, 2003.

**886**

Kenneth Blair McClain II, Independence, H. Kent Desselle, Scott B. Hall, Independence, for Appellant.

Stephen D. Manz, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

The sole issue on appeal is whether an insurer may enforce a provision in a homeowner's policy limiting replacement cost coverage by a depreciation factor until the property is actually replaced. Depositors Insurance Company (hereinafter "Depositors") filed a motion for summary judgment on the policy claim of Mr. and Mrs. Dollard (hereinafter "the Dollards") who filed a cross-motion for summary judg-

ment. The trial court entered summary judgment for Depositors holding that § 379.150, RSMo 2000,[1] did not bar enforcement of the replacement cost limitation of the policy. We affirm.

While insured by Depositors, the Dollards sustained a partial fire loss to their residence [2] and personal property. Depositors paid a portion of the loss representing the amount it determined to be the actual cash value of the personal property at the time of the loss. Depositors refused to pay an additional amount until the damaged property was actually repaired or replaced.

The policy contained a Personal Property Replacement Cost Endorsement that provided in part (emphasis added):

A. THE COMPANY SHALL BE LIABLE UNDER THIS ENDORSEMENT:

1. FOR ANY LOSS TO PROPERTY OWNED BY THE INSURED;

2. FOR ANY LOSS TO PROPERTY WHICH HAS BEEN MAINTAINED IN GOOD AND WORKABLE CONDITION AND IS BEING USED OR STORED FOR USE BY THE INSURED;

3. **WHEN THE DAMAGED OR DESTROYED PROPERTY HAS ACTUALLY BEEN REPAIRED OR REPLACED BY THE INSURED;**

B. THE COMPANY'S LIABILITY FOR LOSS UNDER THIS ENDORSEMENT SHALL NOT EXCEED THE SMALLEST OF THE FOLLOWING AMOUNTS:

1. THE LIMIT OF LIABILITY OF THE POLICY APPLICABLE TO THE DAMAGED OR DESTROYED PROPERTY;

---

**1.** All statutory references are to RSMo 2000 unless otherwise indicated.

**2.** The loss to the real property has been paid and is not at issue.

2. THE REPLACEMENT COST OF THE PROPERTY OR ANY PART THEREOF; OR

3. THE AMOUNT ACTUALLY AND NECESSARILY SPENT BY THE INSURED IN REPAIRING THE PROPERTY OR ANY PART THEREOF.

C. THE COMPANY RESERVES THE RIGHT TO REPLACE AT ITS COST ANY ITEM (S) DAMAGED OR DESTROYED WITHOUT OBLIGATION TO REPLACE ALL ITEMS.

D. YOU MAY MAKE A CLAIM FOR LOSS ON AN ACTUAL CASH VALUE BASIS AND THEN MAKE CLAIM WITHIN 180 DAYS AFTER THE LOSS FOR ANY ADDITIONAL LIABILITY IN ACCORDANCE WITH THIS ENDORSEMENT.

No additional premium was charged for the replacement cost coverage.

The Dollards concede that the policy language is unambiguous and that Depositors has correctly conditioned payment of additional money upon actual repair or replacement if the policy language cited is enforceable. They contend, however, that § 379.150 prohibits the enforcement of this policy provision and that Depositors must pay immediately the cost of repair or replacement without regard to whether the Dollards have repaired or replaced the property or ever intend to do so.

Section 379.150, RSMo,[3] provides as follows:

Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured **a sum of money equal to the damage done to the property**, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured. (Emphasis added).

The present dispute hinges upon the interpretation of the bold-faced passage. The plaintiffs argue for a construction of that passage that treats the full replacement cost as the "damage done to the property," as opposed to the replacement cost minus depreciation (the actual cash value, or "ACV"), as urged by Depositors.

Our review of a grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). In conducting that review, we must view the evidence in the light most favorable to the non-movant. *Id.* Viewed in that light, if there remains a genuine dispute of material fact or if the facts do not entitle the movant to judgment as a matter of law, then we must reverse the judgment below. *Id.*

Generally, the denial of a motion for summary judgment is not a final judgment that may be reviewed on appeal. *See First Nat'l Bank of Annapolis, N.A. v. Jefferson Ins. Co. of New York,* 891 S.W.2d 140, 141 (Mo.App.1995). When the merits of that motion, however, are inextricably intertwined with the issues in an appealable summary judgment in favor of another party, then that denial may be reviewable. *Id.* The parties agree that the decisive issue for resolution is a question of law.

The central case interpreting the statutory language of § 379.150, RSMo, is *Wells*

**3.** Historical note: The predecessors to § 379.150 were § 6010, RSMo 1879 (original enactment); § 5899, RSMo 1889; § 7971, RSMo 1899; § 7022, RSMo 1909; § 6231, RSMo 1919; § 5821, RSMo 1929; and § 5932, RSMo 1939. The language of these earlier statutes was essentially identical to the present statute.

*v. Missouri Property Insurance Placement Facility*, 653 S.W.2d 207 (Mo. banc 1983). *Wells* involved the issue of the applicability of the valued policy statutes (§§ 379.140–145 and 379.160) to claims filed on policies issued under the Missouri FAIR Plan, § 379.810, *et seq.*[4] The allegations of Count I in that class action dealt with three policyholders who had partial losses to property due to fire. *Id.* at 209. The insureds claimed that, in violation of § 379.150, the insurer improperly deducted depreciation from the cost to repair and sought recovery of the deducted amount under the rationale they were entitled to receive the cost of repair in money. In *Wells*, the Supreme Court stated:

> There is no express indication of how "the damage done on [sic] the property" is to be calculated, but our courts have long held that under that section and its predecessors damages are to be measured by the difference between the reasonable values of the property immediately before and immediately after the casualty.

*Id.*[5] The *Wells* case also noted that the statute (together with §§ 379.140, .150, and .160 [6]) affects "private insurance contracts that result from direct negotiations between the insurance company and the consumer." *Id.* at 211.

The Dollards argue that *Wells* is inapposite, because it involved policies issued under the Missouri FAIR Plan. While correct that the particular policy involved in *Wells* was one issued under the FAIR Plan, the

analysis within the opinion makes it clear that the interpretation of § 379.150 is applicable to regular insurance policies, as well. Indeed, the discussion of the statute cites a long series of prior cases discussing the interpretation of the term "damage" within the statute. *Id.* The interpretation of the statute employed by *Wells* appears to have been extensively employed in many cases both before *Wells* and in subsequent opinions. As such, it appears to be very firmly embedded in case law. Although not discussed in *Wells*, we believe that the interpretation of "damage" reflects not a statutory interpretation but a recognition that fire insurance policies generally and historically cover losses at "actual cash value."

## THE PRIMARY PURPOSE OF SECTION 379.150

Although most of the cases involving § 370.150 have involved issues similar to those in *Wells*, the primary historical purpose of § 379.150 is different. In many insurance policies, it is the insurer who has the right to decide in the case of a partial loss whether property shall be repaired, replaced, or a sum of money be paid to the insured. The term "replace" in connection with this option must be distinguished from the concept of "replacement cost" insurance.

> The issue under "repair or replace" options ... is essentially whether the insurer can satisfy its obligation by paying less than the actual cash value; "re-

---

**4.** The Missouri FAIR Plan is a program initiated to provide for basic property insurance for individuals who possessed property in "high risk" areas.

**5.** The same measure of damages was utilized in relation to § 379.150's predecessors, such as § 6231, R.S.1919. *See Jarnagin v. Queens Ins. Co. of Am.*, 272 S.W. 1095, 1096 (Mo. App.1925) (citing *State ex rel. N. British & Mercantile Ins. Co. v. Cox*, 307 Mo. 194, 270

S.W. 113 (1925); *Security Printing Co. v. Conn. Fire Ins. Co.*, 209 Mo.App. 422, 240 S.W. 263 (1922); *Tinsley v. Aetna Ins. Co.*, 199 Mo.App. 693, 205 S.W. 78 (1918); *Non–Royalty Shoe Co. v. Phoenix Assurance Co., Ltd.*, 277 Mo. 399, 210 S.W. 37 (1919); *Sharp v. Niagara Fire Ins. Co.*, 164 Mo.App. 475, 147 S.W. 154 (1912)).

**6.** The valued policy statutes not at issue in the present case.

placement cost" provisions, on the other hand, address whether the insurer is essentially obligated to pay more than the actual value.

12 LEE R. RUSS & THOMAS F. SEGALLA, HOLMES' COUCH ON INSURANCE 3d § 176.1 (1998). Missouri has adopted the 1943 "Standard Fire Insurance Policy of the State of New York" as the standard fire policy for use in Missouri. 20 CSR 500–1.100. That regulation also mandates several changes to the standard policy form because of statutory provisions, including § 379.150. 20 CSR 500–1.100.3 states (emphasis added):

> The language in lines 141–147 of the 1943 Standard Fire Insurance Policy for New York relating to *"company's options"* shall be superseded by the following or equivalent language: Upon partial destruction or damage to insured property, this company shall pay the insured a sum of money equal to the damage done or repair the same to the extent of such damage, not exceeding the amount in the policy, so that said property shall be in as good condition as before the fire, ***at the option of the insured,*** pursuant to § 379.150, RSMo (1986).

Thus, in all Missouri fire policies [7] involving partial loss, the sole right to decide whether property should be repaired or replaced or the loss paid in money is given to the insured, rather than the insurer.

### REPLACEMENT COST COVERAGE

In a standard policy compensating an insured for the actual cash value of damaged or destroyed property, the insured is responsible for bearing the cash difference

necessary to replace old property with new property. Thus, the insured bears the share of the loss resulting from deterioration, obsolescence, and similar depreciation of the property's value at the time of the loss. Replacement cost insurance covers this shortfall. 12 LEE R. RUSS & THOMAS F. SEGALLA, HOLMES' COUCH ON INSURANCE 3d § 176.56. Provisions similar to those in the Dollards' policy requiring replacement before compensation for this shortfall are common in replacement cost policies. *Id.* There are no special statutory or regulatory provisions for replacement cost provisions in Missouri.

### THE EFFECT OF § 379.150 ON REPLACEMENT COST POLICIES

*Wells,* of course, involved a FAIR Plan policy, which the court equated to the provisions of a "bare bones" standard fire policy under the New York form. 653 S.W.2d at 212. The Dollards argue that their claim is governed rather by *Abercrombie v. Allstate Insurance Co.,* 891 S.W.2d 838 (Mo.App.1994), which involved both a replacement cost policy and § 379.150. Mrs. Abercombie had a replacement cost policy with a provision similar to the one here that provided that the insurer "will not pay more than the actual cash value of the damaged property until it is repaired, restored or replaced for your use." *Id.* at 839. She exercised her option under § 379.150 to receive money for her loss rather than have Allstate itself repair or replace the property. *Id.* at 840. When Allstate made payment to her, it withheld sums that the court described as "depreciation" from both the payments made for real property and personal property loss. This court ultimately held that

---

7. For purposes of our discussion herein we neither assume or decide whether or not § 379.150 covers risks other than fire which are included in various types of Homeowners Policies. Those interested in the distinction between single risk, multiple risks and all risk policies and the evolution of fire polices into package risk homeowner's policies may see Appleman on Insurance 2d § 1.11.

Allstate wrongfully withheld both depreciation amounts. This holding, the Dollards urge, requires reversal of the summary judgment because *Abercrombie* requires under § 379.150 that, where replacement cost coverage is at issue, the "damage to the property" under § 379.150 is the replacement cost without deduction for depreciation. In essence, they contend that *Abercrombie,* interpreting § 379.150, prohibits enforcement of the policy provision conditioning payment of the difference between actual cash value and replacement cost upon actual repair and replacement of the property by the insured. The Dollards have misunderstood the holding in *Abercrombie.*

Property insurance policies generally provide for three methods for determining the amount of the damage or loss under the policy. First, the parties may agree as to the amount of the damage. Second, the amount of damages may be determined by court judgment. Third, the amount of damage may be determined by an appraisal method (essentially some form of binding arbitration). This third method was the one used by Mrs. Abercombie. The appraisal report utilized a replacement cost calculation. *Id.* The court clearly stated that such a calculation did not comport with the measurement of the amount of damages available under § 379.150. *Id.* The court further noted that neither party had discussed the use in the appraisal report of an improper measure of damages or objected to the method, concluding: "We are justified in giving to the appraisal the same effect as the parties gave to it, to wit, *the effect of fixing the amount of Mrs. Abercrombie's damage." Id.* (italics added). Thus, *Abercrombie* did not hold that the replacement value was a proper measure of damages under § 379.150, but only

that once the insurer and insured had agreed on the appraisal method, they were bound by that determination of damage.[8]

This distinction was recognized by this court in *Landes v. State Farm Fire & Casualty Co.,* 907 S.W.2d 349, 357 (Mo. App.1995). In *Landes,* the insured had a replacement cost policy and elected to have the *insurer* repair the property rather than electing a cash payment. The policy provided that replacement cost coverage, like the one at hand, limited that coverage to actual cost value until the property was replaced or repaired. The insurer paid an advance to start construction and there was no dispute that it ultimately paid the complete expense "to return the building to as good condition as before the fire after restoration of the building was complete." *Id.* Under those circumstances, we found no violation of § 379.150 or the policy provisions.

We conclude that § 379.150 has two purposes. First, it switches the right to determine whether the insured shall receive cash for the loss or repair or replacement of the property to the insured. *See* 20 CSR 500–1.100.3. Second, it has been consistently interpreted by our courts to set the damage measurement calculation, if the insured selects the first option to be the actual cash value of the property immediately before the loss. *Wells,* supra. These two purposes together set a minimum standard, but they do not override the admittedly unambiguous language of Depositor's policy that meets this statutory minimum and provides an additional benefit, subject to conditions that the property actually be repaired or replaced. See *Portell v. Farm Bureau Town & Country Ins. Co. of Mo.,* 888 S.W.2d 728, 729 (Mo.App.1994).

---

**8.** We do not consider whether there are methods available to contest the use of an improp-

er damage calculation under the appraisal method.

The court's judgment in favor of Depositors is affirmed.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.