VICTOR C. HOWARD, JUDGE
Patti Nelson appeals from the trial court's judgment directing verdict in favor of Farm Bureau Town and Country Insurance Company of Missouri on her claims of breach of contract arising out a claim for partial fire loss of her home. The judgment is affirmed in part and reversed in part, and the case is remanded with directions.
Background
Ms. Nelson owns a home in Weatherby Lake in Platte County, Missouri. Farm Bureau issued a homeowner's policy on the property that was in effect from December 27, 2005, until December 27, 2006. Ms. Nelson also had a separate insurance policy on the property issued by American Security Insurance Company, which provided coverage for the dwelling only.
On February 11, 2006, Ms. Nelson sustained a partial fire loss to the residence and the personal property in it. She notified Farm Bureau of the fire that day. She subsequently presented claims to Farm Bureau to recover insurance proceeds for losses to the structure and personal property and for additional living expenses incurred. Farm Bureau paid Ms. Nelson two *85 $2,000 advance payments with a reservation of rights that if it determined that the loss was not covered, she would repay the money.
Beginning in March, the Farm Bureau claims adjuster prepared several adjuster summaries outlining the scope of damage and the cost of repair for the structure claim. The first one dated March 9, 2006, showed an estimate of $26,905.33. After Ms. Nelson and her contractor reviewed the summary, they requested three additional items. The adjuster agreed with the additions and prepared a second summary on March 18 with an estimate of $28,267.12. Ms. Nelson and her contractor continued to request additional repairs. Although the claims adjuster did not agree with the new additions, he prepared two more summaries on April 3 for $38,061.00 and on April 12 for $55,110.77 to reflect Ms. Nelson's additional claims. Ultimately, because of the disagreement between Farm Bureau and Ms. Nelson about the scope of damage and cost of repair on the structure claim, Farm Bureau retained All Service Restoration to prepare an estimate for repairing the damage to the house. All Service's bid was $28,410.95. Believing the All Service bid was an accurate assessment of damages and cost of restoration, Farm Bureau issued a payment to Ms. Nelson in May in the amount of $23,372.99 based on the All Service bid plus $4,962.04 for interior structure cleaning minus a $10,000 deductible.
Toward the end of April, Ms. Nelson prepared and submitted an inventory list of personal property damaged in the fire. The list claimed $24,382.65 for damaged property, which included a claim of $1,609.52 for spoiled food. In May, Farm Bureau issued a payment to Ms. Nelson and ServiceMaster in the amount of $10,871.09 for ServiceMaster's bill of $14,871.09 for laundry and dry cleaning, pack out and storage, and content cleaning less the $4,000 in advance payments already made to Ms. Nelson. In June, after an inspection of Ms. Nelson's personal property, Farm Bureau issued another payment to Ms. Nelson in the amount of $3,134.57 for items on her inventory that were damaged or not cost effective to clean, food, and clothing. In total, Farm Bureau issued $18,005.66 to Ms. Nelson for her claimed personal property damages.
Ms. Nelson also made a claim in the amount of $12,178.33 for additional living expenses as a result of not being able to live in her home after the fire until the beginning of July. Farm Bureau determined that the home was inhabitable on May 13, 2006, after the cleaning by ServiceMaster and issued payments totaling $5,828 for her claimed additional living expenses.
In November 2006, Ms. Nelson informed Farm Bureau that she intended to make additional claims. At that time, Farm Bureau invoked the appraisal process under the policy. That process started at the beginning of February 2007. Farm Bureau selected Brachman Construction as its appraiser, and Ms. Nelson selected French Remodeling. The Brachman bid was $46,947.86; the French bid was $77,568.55. When the process started, Farm Bureau also requested a copy of Ms. Nelson's American Security Policy. In April 2007, Farm Bureau received a copy of the American Security Policy and determined that that policy was the primary policy and the Farm Bureau policy was for any excess over American Security Policy coverage limit. Farm Bureau also learned that Ms. Nelson filed a lawsuit against American Security and settled the claims for less than the policy coverage limit in May 2007. Accordingly, Farm Bureau determined that because the primary insurance coverage was not exhausted, its policy was not *86 triggered and stopped the appraisal process. It notified Ms. Nelson in August 2007 that it wasn't moving forward with the appraisal process.
Ms. Nelson filed a lawsuit against Farm Bureau and American Security for breach of contract and vexatious refusal to pay. Her claims against America Security were dismissed with prejudice based on her settlement with them, and her case against Farm Bureau proceeded to trial.
At the close of Ms. Nelson's case, Farm Bureau filed a motion for directed verdict arguing, among other things, that Ms. Nelson failed to make a submissible case on the proper measure of damages for the structure and personal property claims. Specifically, it argued that Ms. Nelson failed to introduce evidence of the actual cash value of the structure and personal property, which is defined under Missouri law as the difference between the reasonable value of the property immediately before and immediately after the loss. It asserted that Ms. Nelson instead merely submitted some evidence of the cost to repair the structure and the replacement value of the personal property, which by itself was insufficient to prove actual cash value. Farm Bureau also argued that Ms. Nelson failed to make a submissible case on the prejudgment interest claim. The trial court sustained the motion on Ms. Nelson's structure, personal property, and prejudgment interest claims.
Ms. Nelson's claims for additional living expenses and vexatious refusal to pay remained and were submitted to the jury. The jury returned a verdict in favor of Ms. Nelson on the policy in the amount of $6,350.33, for penalty in the amount of $785.03, and for attorney's fees in the amount of $35,000. The trial court entered judgment accordingly, and this appeal by Ms. Nelson followed.
Standard of Review
Ms. Nelson raises three points on appeal challenging the trial court's directed verdict on her structure, personal property, and prejudgment interest claims. In reviewing the trial court's granting of a motion for directed verdict, the appellate court determines whether the plaintiff made a submissible case. Investors Title Co., Inc. v. Hammonds , 217 S.W.3d 288, 299 (Mo. banc 2007) ; Payne v. Cunningham , 549 S.W.3d 43, 47 (Mo. App. E.D. 2018). A case is not submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. Id. The court views the evidence and permissible inferences in the light most favorable to the plaintiff and disregards all contrary evidence and inferences. Payne , 549 S.W.3d at 47.
Discussion
In her first point on appeal, Ms. Nelson contends that the trial court erred in directing verdict for Farm Bureau regarding the measure of damages for the structure. She argues that the evidence presented on the appraisal process produced an appropriate measure of damages that was not manifestly unjust.
Ms. Nelson's insurance policy with Farm Bureau at the time of the fire was a replacement cost policy. It contained the following provisions relevant to damages:
SETTLEMENT AND VALUATION
If the Information Page(s) states that this is a replacement cost policy, then, until you complete repair or replacement of the property, the most we will pay will be the lesser of:
(1) The difference in market value before and after the loss;
(2) The limit of liability which pertains to the coverage;
*87 (3) The amount of the Insured's insurable interest in the property;
(4) Any applicable coverage limitation on the property as set forth in this policy.
If you complete repair or replacement of the damaged property at the same location and make a repair cost claim within 180 days of the original loss settlement, then we will pay the lessor of:
(5) The amount spent to repair or replace the damaged or stolen property;
(6) The amount it would take to repair or replace the property, with like kind and quality but not necessarily identical or matching materials, at the same location as the insured premises;
(7) The limit of liability.
If you have a partial loss caused by fire, then you have an option to have us repair the property, the cost not to exceed the amount written in the policy, so that the property shall be in as good a condition as before the fire.
The policy defined "market value" as "the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so."
The Farm Bureau policy also contained an appraisal provision that could be invoked by either party if the parties did not agree as to the amount of loss. It provided:
APPRAISAL
In case the insured and this company shall fail to agree as to the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of such demand. The appraisers shall then appraise the loss in accordance with the Settlement and Valuation condition within this policy, stating separately the amount of loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. The appraisers shall select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then, on request of the insured or this company, and upon written notice to the other party, such umpire shall be selected by a judge of a court of record in the state and county (or city if the city in not within a county) in which the property covered is located. The umpire shall make the award within thirty (30) days after the umpire receives the appraisers' submissions of their differences. An award in writing, so itemized, of any two (2) when filed with this company shall determine the amount of loss. Each appraiser shall be paid by the party selecting such appraiser and the expense of appraisal and umpire shall be paid by the parties equally. This process is not binding on either party.
Under this appraisal provision, the appraisers must appraise the loss in accordance with the Settlement and Valuation provision of the policy outlined above.
Section 379.150,[1] governs the measure of damages for real and personal property in the case of a partial loss.[2]
*88 Wells v. Mo. Prop. Ins. Placement Facility , 653 S.W.2d 207, 210 (Mo. banc 1983) ; Porter v. Shelter Mut. Ins. Co. , 242 S.W.3d 385, 390 (Mo. App. W.D. 2007). It provides:
Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured.
§ 379.150. The statute allows the insured to either take a cash payment or to have the insurer repair her property. Id. ; Wells , 653 S.W.2d at 214. In this case, Ms. Nelson elected a cash payment rather than have Farm Bureau repair her property.
The amount to which an insured is entitled under section 379.150 is "a sum of money equal to the damage done." That amount of damages is called "actual cash value" or "diminution in value" and is measured by the difference between the reasonable values of the property immediately before and immediately after the casualty. Wells , 653 S.W.2d at 210 ; Porter , 242 S.W.3d at 390 ; Sharaga v. Auto Owners Mut. Ins. Co. , 831 S.W.2d 248, 252 (Mo. App. W.D. 1992). "[T]he insured is responsible for bearing the cash difference necessary to replace old property with new property. Thus, the insured bears the share of the loss resulting from deterioration, obsolescence, and similar depreciation of the property's value at the time of the loss." Dollard v. Depositors Ins. Co. , 96 S.W.3d 885, 889 (Mo. App. W.D. 2002).
The amount of damages under section 379.150 is generally not measured by the cost of repair. Wells , 653 S.W.2d at 210. Cost of repair is, however, admissible as evidence of damages, but itself is not sufficient to establish the amount of damages. Id. Cost of repair is also sometimes an exception to the actual cash value or diminution in value measure of damages and can be considered when property can be restored to its former condition at a cost less than actual cash value or diminution in value. Sharaga , 831 S.W.2d at 252. Cost of repair is only proper as the measure of damages when the damage is comparatively insignificant considering total value of the structure. Id. In cases of partial loss, the burden is on the insured to prove the value of the property both before and after the loss. Wells , 653 S.W.2d at 211 ; Sharaga , 831 S.W.2d at 252.
Ms. Nelson argues that cost of repair was the appropriate measure of damages in this case and, specifically, that the evidence regarding the appraisal process met her burden of proving damages. She cites Abercrombie v. Allstate Ins. Co. , 891 S.W.2d 838 (Mo. App. W.D. 1994), as support for her assertions, however, it supports the conclusion that the actual cash value was the proper measure of damages in this case.
In Abercrombie , this court addressed whether Allstate properly withheld depreciation from its payment to the insured after the parties' selected appraisers submitted a report specifying an amount of loss. Id. at 839. The court discussed whether the appraisal fixed the "sum of money equal to the damage done to the property," which it found was the amount the insured was entitled to under section 379.150. Id. at 840. Quoting Wells , it further noted that the amount of damages under section 379.150 is to be determined by the difference in value of the property immediately *89 before and immediately after the loss and that cost of repair by itself is not sufficient to establish that amount of damage. Id. Although the appraisal amount fixed only the amount for the replacement costs to bring the property to the condition it was in, the court ultimately gave the appraisal the effect of fixing the amount of the insured's damages because neither party objected to or discussed the appraisal's use of the improper measure of damages. Id.
Unlike in Abercrombie , the appraisal process in this case was never completed; the parties' respective appraisers never agreed on the amount of loss, an umpire was never selected, and an award was never made. And unlike in Abercrombie , Farm Bureau did object at trial to Ms. Nelson's use of cost of repair as the measure of damages. In its motion for directed verdict, it specifically argued that actual cash value was the proper measure of damages, not cost of repair, which was the only evidence Ms. Nelson submitted on the issue.
Ms. Nelson's Farm Bureau policy was consistent with section 379.150. Under section 379.150 and the policy, the measure of damages was the difference between the value of the property immediately before and immediately after the fire, and Ms. Nelson had the burden to prove the two values. However, at trial, Ms. Nelson presented cost of repair evidence regarding the structure, including adjuster summaries outlining the scope of damage and the cost of repair for the structure and a $77,568.55 repair estimate prepared by her appraiser. But cost of repair was not the proper measure of damages in this case as an exception to actual cash value or diminution of value. It was not comparatively insignificant considering the total insured value of the house of $206,938. Additionally, while Ms. Nelson's cost of repair evidence was admissible as some evidence of damages, it was not itself sufficient to establish the amount of damages. Ms. Nelson did not introduce evidence of the market value of the house before the fire or the market value of the house after the fire. She acknowledges in her brief that neither her appraisal nor Farm Bureau's appraisal, which were based on the cost to repair the house, complied with section 379.150 and Wells . She, therefore, failed to make a submissible case on the issue of damages on her structure claim, and the trial court properly directed verdict in favor of Farm Bureau on the structure claim. The point is denied.
In her second point on appeal, Ms. Nelson argues that Farm Bureau waived or was estopped at trial from objecting to the measure of damages for the structure and personal property. Specifically, she asserts that because Farm Bureau assisted and instructed her in the claims process and manifested an intention to use cost of repair or replacement cost as the measure of damages, it waived or was estopped from asserting actual cash value or diminution in value as the correct measure of damages.[3]
*90 "Waiver is the intentional relinquishment of a known right." Am. Eagle Waste Indus., LLC v. St. Louis Cty. , 379 S.W.3d 813, 827 (Mo. banc 2012) (internal quotes and citation omitted). See also Brown v. State Farm Mut. Auto. Ins. Co. , 776 S.W.2d 384, 386 (Mo. banc 1989). "If waiver is implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right." Brown , 776 S.W.2d at 386-87 (internal quotes and citation omitted). Estoppel has three elements: " '(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act.' " Am. Eagle Waste Indus. , 379 S.W.3d at 827 (quoting Brown , 776 S.W.2d at 386 ).
First, Ms. Nelson argues that Farm Bureau waived and/or was estopped from asserting actual cash value or diminution of value as the measure of damages for the structure because it controlled and directed the claims process and used cost of repair during that process and because at trial, it presented evidence of cost of repair and did not object to her cost of repair evidence. She argues that the case, Scism v. Home Ins. Co. of New York , 224 S.W. 48 (Mo. App. 1920), is analogous. The holding in Scism , however, undermines Ms. Nelson's argument and demonstrates that Farm Bureau did not waive and was not estopped from arguing at trial that she did not make a submissible case on the correct measure of damages set forth in section 379.150, Wells , and the policy.
In Scism , the plaintiff's barn sustained damage from lightning. 224 S.W. at 48. The insurer admitted its liability and offered to settle, but the parties could not agree on the amount of damages. Id. At trial, witness for both parties testified as to the cost of repairing the damage, and the trial court's instruction on the measure of damages was cost of repair. Id. at 48-49. The Springfield Court of Appeals explained that under the applicable 1909 statute, where the insured demands the payment in money of damage in cases of partial loss, "it shall be the duty of the party writing the policy to pay the assured a sum of money equal to the damage done to the property," and that "[s]uch amount is arrived at by ascertaining the difference between the value before and after the partial destruction or damage to the property." Id. at 49 (internal quotes and citation omitted).
As in the instant case, the plaintiff in Scism argued that "both parties tried this case in the circuit court on the theory that the cost of repairing and restoring the building to its former condition is the correct measure of damages, and that, having done so, the defendant cannot now change such theory and complain of the instruction." Id. Although the court acknowledged that such principle of law is correct when applied properly, it held that to make the rule applicable, "it must clearly appear that the complaining party did adopt, and invited the court to adopt, such wrong theory." Id. The court explained that the admissibility of evidence is not determined by whether the evidence strictly conforms to the measure of damages but whether it "throws light" on the question. Id. Ultimately, it held that cost of repair was admissible as evidence in the case because it throws some light on the measure of damages,
but no one would contend that, because defendant introduced such evidence, [it] thereby invited and would be bound by *91 an instruction that [cost of repair] fixed the value of the damaged property.... The defendant's failure to object to evidence showing cost of repairing the barn in a certain way and to a certain extent, or itself introducing evidence, does not prevent defendant from insisting on the damages being ascertained according to the correct measure.
Id.
Here, like in Scism , Farm Bureau and Ms. Nelson could not agree on the amount of damage to the structure. Farm Bureau does not dispute that it used repair estimates to ultimately arrive at a figure for settlement. But nothing in the record indicated that it intended to pay full repair cost prior to the property actually being repaired. Further, Farm Bureau did not adopt or invite the trial court to adopt the wrong measure of damages-cost of repair-by its failure to object to, or its own introduction of, such evidence at trial. As discussed in Wells and Scism , cost of repair throws light on and is admissible as evidence of damages, but itself is not sufficient to establish the amount of damages. Wells , 653 S.W.2d at 210 ; Scism , 224 S.W. at 49. Farm Bureau's conduct during the claims process and at trial did not clearly and unequivocally show a purpose to relinquish its right to insist that the trial court apply the proper measure of damages of actual cash value or diminution of value or that such conduct constituted an admission, statement, or act that cost of repair was the proper measure of damages. It did not waive and was not estopped from asserting that Ms. Nelson failed to make a submissible case on her structure claim.
Next, Ms. Nelson argues that Farm Bureau waived and/or was estopped from asserting actual cash value or diminution of value as the measure of damages for the personal property because it provided her with, and she completed, the personal property inventory form to submit her claim. She argues that Farm Bureau's form, which requested the date each item was purchased, the replacement cost for each item, and a determination of whether each item was salvageable, established a cost of replacement measure of damages to which Farm Bureau was bound.
The form, however, did not evince intent by Farm Bureau to pay full replacement cost of the personal property. Ms. Nelson acknowledges that the form contained additional columns to be completed by Farm Bureau for "Betterment" and "Settlement value." In fact, the additional columns were completed by Farm Bureau for some of the items and showed its adjustment of the replacement cost to account for the difference necessary to replace old property with new property, which the insured is responsible to bear under the actual cash value measure of damages. See Dollard , 96 S.W.3d at 889. Farm Bureau's use of the inventory form did not clearly and unequivocally show a purpose to relinquish its right to insist that the trial court apply the proper measure of damages.
Finally, Ms. Nelson argues that her inventory list along with her testimony that items on the list were destroyed and a letter from Service Master indicating that the property was unsalvageable or not cost effective to clean was sufficient to make a submissible case on damages to personal property. She cites DeWitt v. American Family Mutual Insurance Company , 667 S.W.2d 700 (Mo. banc 1984), and Sharaga v. Auto Owners Mutual Insurance Company , 831 S.W.2d 248 (Mo. App. W.D. 1992), to support this argument. Those cases are, however, distinguishable from this one.
In DeWitt , the plaintiff/insured suffered a fire loss to real and personal property.
*92 667 S.W.2d at 702. At trial, she testified, item by item, her opinion of the fair market value of the personal property. Id. at 709. Specifically, she stated what was in her home, each item's original cost, the condition of each item at the time of the loss, and what it would cost to replace it. Id. The Missouri Supreme Court held that such evidence established the property's value and was, therefore, sufficient to support the plaintiff/insured's claim for loss of personal property. Id.
Likewise, in Sharaga , this court addressed a partial fire loss of real and personal property, confirming that in such cases "damages are measured by the difference between the reasonable values of the property immediately before and immediately after the casualty." 831 S.W.2d at 252. At trial, the plaintiff/insured provided a list of original and replacement costs of each item of personal property, and this court acknowledged that while such costs are not the figures of fair market value, they along with evidence of the age of the items would allow the jury to ascertain the value of the property after the fire. Id. at 253-54. Finally, this court held that such evidence in addition to the plaintiff/insured's testimony about the destruction of the property and photographs of sections of the damaged house was sufficient to support her claim for loss of personal property. Id. at 254.
Ms. Nelson failed to offer direct evidence of the value of her personal property immediately before and after the fire. While she did introduce evidence of its purchase date and replacement cost and that it was destroyed by the fire, unlike in DeWitt and Sharaga , she did not present the original cost of each item to enable the jury to determine the value of the personal property. She did not make a submissible case on damages to personal property, and the trial court did not err in directing verdict in favor of Farm Bureau on that claim. Point two is denied.
In her last point on appeal, Ms. Nelson contends that the trial court erred in directing verdict for Farm Bureau on her claim for prejudgment interest on the extra living expenses. Section 408.020 authorizes an award of prejudgment interest "for all moneys after they become due and payable, on written contracts ... after they become due and demand of payment is made[.]" "Three requirements must be met before such interest can be awarded on a claim: (1) the expenses must be due; (2) the claim must be liquidated or the amount of the claim reasonably ascertainable; and (3) the obligee must make a demand on the obligor for the amount due." Jablonski v. Barton Mut. Ins. Co. , 291 S.W.3d 345, 350 (Mo. App. W.D. 2009) (internal quotes and citation omitted). Ms. Nelson argues that she presented sufficient evidence of all three requirements to make a submissible case for prejudgment interest on her additional living expenses claim.
Generally, a policyholder is entitled to interest from the date the claim became payable under the policy. Huffstutter v. Michigan Mut. Ins. Co. , 778 S.W.2d 391, 394 (Mo. App. E.D. 1989) ; Francka v. Fire Ins. Exch. , 668 S.W.2d 189, 190-91 (Mo. App. S.D. 1984). To be liquidated, the amount due must be fixed and determined or readily ascertainable by computation or a recognized standard. Jablonski , 291 S.W.3d at 350. Damages may be ascertainable even if there is a dispute over monetary value or the parties' experts compute different estimates of loss. Id. The fact that a party denies liability or defends against a claim does not preclude recovery of prejudgment interest. Id. Where the damages involved are liquidated, application of section 408.020 is not discretionary but mandatory.
*93 Columbia Mut. Ins. Co. v. Long , 258 S.W.3d 469, 480 (Mo. App. W.D. 2008).
In this case, the amount of additional living expenses was fixed by the insurance policy itself. Jablonski , 291 S.W.3d at 350 ; Long , 258 S.W.3d at 480. Under the policy, in the case of a loss making the premises uninhabitable, Ms. Nelson was entitled to payment for "any necessary and reasonable increase in living expenses incurred by [her] so that [her] household can maintain its normal standard of living ... for the shortest time it should take to repair or replace the premises." Ms. Nelson submitted to Farm Bureau four claims for additional living expenses totaling $12,178.33 for the time period February 11, 2006, through July 7, 2006. Specifically, the first claim was for $7,575.21 covering expenses from February 11, 2006, through April 21, 2006; the second claim was for $2,663.87 for the time period April 21, 2006, through May 30, 2006; the third claim was for $1,639.25 for the time period June 1, 2006, through June 30, 2006; and the fourth was for $300 for the time period July 1, 2006, through July 7, 2006. Thus, her claim for additional living expenses was liquidated.
Farm Bureau contends, however, that Ms. Nelson failed to introduce evidence of a specific date of a demand for payment of the additional living expenses. Prejudgment interest on liquidated claims is allowed only after demand of payment is made. Juan v. Growe , 547 S.W.3d 585, 597 (Mo. App. E.D. 2018). "A demand for payment may be made any time after the debt becomes due." Id. If a demand for payment isn't made before the filing of the lawsuit, then the filing itself constitutes a demand. Id. "Although the demand need not be in a certain form, it must be definite on amount and time." Id.
While the record shows that Ms. Nelson submitted her first claim for additional living expenses to Farm Bureau on April 25, 2006, it does not reveal the dates she submitted the second, third, or fourth claims to the company. In her brief, Ms. Nelson generally states that the final claim was submitted to Farm Bureau after she moved back into the home in July 2006, but the record does not specify exactly when the last three claims were filed. The Farm Bureau claims adjuster acknowledged at trial that Ms. Nelson had submitted the four claims for additional living expenses to Farm Bureau at some point, and he testified that he issued two payments on May 11, 2006, and May 25, 2006, totaling $5,828 for her claimed expenses up to May 13, 2006, the date he determined that the home was inhabitable. However, nothing in his testimony revealed when Farm Bureau received the claims for the time after mid-May or when the adjuster reviewed them. Ms. Nelson failed to prove a demand for additional living expenses prior to the filing of the lawsuit. The filing of the lawsuit, therefore, constituted the demand. Juan , 547 S.W.3d at 597. Having properly petitioned for interest, Ms. Nelson was entitled to prejudgment interest as provided in section 408.020 on the damages for additional living expenses from the date of the lawsuit until the date of the judgment. The part of the judgment directing verdict in favor of Farm Bureau on Ms. Nelson's claim for prejudgment interest is, therefore, reversed.
"When the amount due is liquidated or readily ascertainable and the prejudgment interest depends merely upon mathematical computation pursuant to § 408.020, it is permissible under Missouri law for the trial court, rather than the jury, to perform the mathematical process of computing the interest."
*94 Dierker Assocs., D.C., P.C. v. Gillis , 859 S.W.2d 737, 746 (Mo. App. E.D. 1993). "It is not necessary for evidence to be presented or for a jury to be instructed on the subject where prejudgment interest is only a matter of mathematical computation." Holtmeier v. Dayani , 862 S.W.2d 391, 406 (Mo. App. E.D. 1993). The case is, therefore, remanded to the trial court with directions to calculate and award prejudgment interest consistent with this opinion.
The judgment is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.
All concur.

All statutory references are to RSMo 2016 unless otherwise indicated.

Section 379.140, the valued policy statute, prohibits insurance companies from asserting that the value of the insured's interest is less than the full face value of the policy. Wells v. Mo. Prop. Ins. Placement Facility , 653 S.W.2d 207, 210 (Mo. banc 1983) ; Eckerd v. Country Mut. Ins. Co. , 289 S.W.3d 738, 744 (Mo. App. E.D. 2009). It also establishes a measure of damages for both a total loss and a partial loss of real property. Wells , 653 S.W.2d at 210. However, regarding the measure of damages for a partial loss, courts have largely ignored the provision and have instead relied on section 379.150 without regard to whether the property is real or personal. Id.

Farm Bureau claims that this point was not preserved for appellate review. In jury-tried cases, "allegations of error must be included in a motion for new trial in order to be preserved for appellate review." Rule 78.07(a). An exception exists for "[q]uestions relating to motions for directed verdict that are granted at trial." Rule 78.07(a)(3). Those matters need not be included in such motion to preserve the alleged error. Id. Ms. Nelson was not required to raise the issues regarding waiver and estoppel relating to Farm Bureau's motion for directed verdict that the trial court granted in a motion for new trial, but she did. In her motion for new trial, she asserted that the trial court erred in directing verdict in favor of Farm Bureau based on her failure to make a submissible case on damages, and in her suggestions in support filed contemporaneously with the motion, she specifically raised the waiver and estoppel argument. The issue was preserved.